# 25-920-cr

---

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

————

UNITED STATES OF AMERICA,
*Appellee,*

-vs-

NICHOLAS DEFELICE,
*Defendant-Appellant.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

---

## OPENING BRIEF FOR DEFENDANT-APPELLANT NICHOLAS DEFELICE

---

TERENCE S. WARD
*Federal Defender, District of Connecticut*
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
(860) 493-6260

TO BE ARGUED BY: DANIEL ERWIN
*Assistant Federal Defender*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... *ii*

JURISDICTIONAL STATEMENT .......................................................... *vi*

STATEMENT OF THE ISSUES............................................................ *vii*

STANDARD OF REVIEW ................................................................... *viii*

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS ......................................................................... 2

SUMMARY OF THE ARGUMENTS ...................................................... 19

ARGUMENT ......................................................................................... 20

    I.    The District Court's denial of the motion to dismiss cannot stand now that the government has conceded that NFA firearms are protected by the Second Amendment.................................................... 20

    II.    This Court cannot affirm the denial of the motion to dismiss on any alternate grounds, as no alternate grounds were discussed in the denial order, and this Court should not attempt to decide the constitutionality of the NFA restrictions without the benefit of full briefing and hearings in the District Court.................................. 21

    III.    If the panel does find the issue ripe for resolution without remand, the weakness of the government's proffered historical antecedents to the NFA will require reversal .......................................... 26

    IV.    The sentence imposed by the district court was substantively and procedurally unreasonable because the district court relied upon federally legal conduct to impose a term of incarceration and has since abandoned the $200 tax Mr. DeFelice neglected to pay... 27

*i*

A. The District Court Committed Plain Error When It Relied Upon Mr. DeFelice's Possession of a Magazine That Was Unlawful Pursuant to Connecticut but Not Federal Law to Sentence Him to Incarceration ........................................................... 28

B. A Remand Is Warranted Insofar as There Is No Deterrent Interest in Incarcerating a Person in Furtherance of a Statute That Congress Has Abandoned ........................................................... 33

C. DeFelice's sentence was substantively and procedurally unreasonable................................................................. 34

CONCLUSION ....................................................................................... 35

CERTIFICATIONS

*ii*

# TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. James*,
    120 F.4th 941 (2d Cir. 2024) ........................................................ 26

*Agostini v. Felton*,
    521 U.S. 203 (1997)....................................................................... 26

*Bondi v. Vanderstock*,
    604 U.S. ___ (2025), No. 23–852 (Mar. 26, 2025) ..................................... 14

*Brown et al v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, et al,*
    No. 4:25-cv-1162 (E.D. Mo. Aug. 1, 2025) .......................................... 18, 25

*California v. Texas*,
    593 U.S. 659 (2021)....................................................................... 24

*Gall v. United States*,
    552 U.S. 38 (2007)........................................................................*ix, x*

*Garland v. Cargill*,
    No.22-976, 2024 WL 2981505 (June 14, 2024)........................................ 9

*Klimas v. Lantz*,
    531 Fed. Appx. 6 (2d Cir. 2013)..................................................... 26

*National Federation of Independent Business v. Sebelius*,
    597 U.S. 519 (2012).................................................................23-24

*New York State Rifle & Pistol Association, Inc v. Bruen*,
    597 U.S. 1 (2022).....................................................................*passim*

*Silencer Shop Foundation et al v. Bureau of Alcohol, Tobacco, and Firearms et al*,
    6:25-cv-56-H (N.D. Tex. 2025)....................................................17-18

*Sonzinsky v. United States,*
    300 U.S. 506 (1937)................................................6, 17-18, 23, 25

*Sulzer Mixpac AG v. A&N Trading Co.,*
    988 F.3d 174 (2d Cir. 2021) ......................................... 21

*United States v. Cavera,*
    550 F.3d 180 (2d Cir. 2008) .........................................ix, x

*United States v. Coplan,*
    703 F.3d 46 (2d Cir. 2012) ...........................................ix

*United States v. Dorvee,*
    616 F.3d 174 (2d Cir. 2010) ..........................................x

*United States v. Harmon,*
    150 F.4th 197 (3rd Cir. 2025)........................................ 32

*United States v. Kimbrough,*
    552 U.S. 85 (2007)...................................................... 11

*United States v. Norton,*
    48 F.4th 124 (3d Cir. 2022) ......................................... 32

*United States v. Miller,*
    307 U.S. 174 (1939) .................................................... 26

*United States v. Park,*
    758 F.3d 193 (2d Cir. 2014) .......................................ix, x

*United States v. Peterson,*
    No. 2:22-cr-231 (E.D. La. July 10, 2023) ........................... *passim*

*United States v. Pugh,*
    945 F.3d 9 (2d Cir. 2019) .............................................*x*

*United States v. Sanchez,*
    340 U.S. 42 (1950)...................................................... 23

*iv*

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992) ................................................................. 8, 9

*United States v. Yousef*,
  327 F.3d 56 (2d Cir. 2003) ............................................................*xi*

*United States v. Vilar*,
  729 F.3d 62 (2d Cir. 2013) ............................................................*xi*

*United States v. Walters*,
  910 F.3d 11 (2d Cir. 2018) ............................................................*ix*

*Zherka v. Bondi*,
  140 F.4th 68 (2d Cir. 2025) ................................................. 21, 22

**Statutes**

1 U.S.C. § 109 .................................................................................. 34

18 U.S.C. § 922 ........................................................................... 2, 22

18 U.S.C. § 923 ................................................................................... 2

18 U.S.C. § 924 ............................................................................... 2-3

18 U.S.C. § 3231 ............................................................................*vii*

18 U.S.C. § 3553(a) ...............................................................*x*, 12, 31

18 U.S.C. § 3742 ...........................................................................*vii*

26 U.S.C. § 5841 ............................................................................ 2-3

26 U.S.C. § 5845 ............................................................................ 2-3

26 U.S.C. § 5849 .........................................................................*viii*

26 U.S.C. § 5861(d) ............................................................. 2-3

26 U.S.C. § 5871 ................................................................. 2-3

28 U.S.C § 1291 .................................................................... *vii*

42 U.S.C. § 18001 ................................................................. 23

**Other Authorities**

One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72 (2025) ............... 1, 17

U.S.S.G. § 4C1.1 .................................................................. 10

## <u>JURISDICTIONAL STATEMENT</u>

The United States District Court for the District of Connecticut (Shea, J.) had subject matter jurisdiction under 18 U.S.C. § 3231. On April 10, 2025, the District Court sentenced Mr. DeFelice to a year and a day in prison for possessing two National Firearms Act firearms that were not registered. A 183. Mr. DeFelice filed a timely notice of appeal on April 14, 2025. A 187. This Court has appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

(1) Whether a remand is necessary so that the district court may consider the significance of the government's concession in a pending Fifth Circuit case that a silencer is a firearm subject to Second Amendment protections where it denied a motion to dismiss National Firearms Act, 26 U.S.C. § 5849, indictment for possession of a silencer and short barreled rifle and no alternative grounds were addressed?

(2) Whether the Court can decide the constitutionality of the National Firearms pursuant to *New York State Rifle & Pistol Association, Inc v. Bruen*, 597 U.S. 1 (2022), in a changing legal landscape without the benefit of full briefing on changes in the law in the district court?

(3) Whether the National Firearms Act violates the Second Amendment as construed by *Bruen* and set forth in the indictment?

(4) Whether the sentence was substantively and procedurally unreasonably where the district court relied upon federally legal conduct to identify a general deterrence interest, the government has changed its position on the applicability of the National Firearms Act to silencers, and Congress has since abandoned the tax predicate to possession that DeFelice neglected to pay?

*viii*

## **STANDARD OF REVIEW**

The Court reviews *de novo* the denial of a motion to dismiss an indictment in a criminal case. *United States v. Walters*, 910 F.3d 11, 22 (2d Cir. 2018); *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013) ("We review *de novo* the denial of a motion to dismiss the indictment."); *United States v. Yousef*, 327 F.3d 56, 137 (2d Cir. 2003) ("We review a district court's decision denying a motion to dismiss an indictment *de novo*.").

This Court reviews sentences for reasonableness. *United States v. Cavera*, 550 F.3d 180, 187–88 (2d Cir. 2008) (en banc). "A district court commits procedural error where it . . . selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Coplan*, 703 F.3d 46, 92 (2d Cir. 2012) (Cabranes, J.) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). The district court also commits procedural error if it relies on an impermissible factor. *See United States v. Park*, 758 F.3d 193, 1999 (2d Cir. 2014) (per curiam) ("The district court . . . committed procedural error . . . by relying . . . on an impermissible factor—namely, whether the government could afford Park's incarceration."). At the time of sentencing, the district court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c); *see also Cavera*, 550 F.3d at 190.

ix

The Court next "review[s] the substantive reasonableness of the sentence, reversing only when the trial court's sentence 'cannot be located within the range of permissible decisions.'" *United States v. Dorvee*, 616 F.3d 174, 179 (2d Cir. 2010) (quoting *Cavera*, 550 F.3d at 189). "Violation of the duty to impose a sentence that is sufficient, but not greater than necessary, can give rise to an appellate determination of substantive unreasonableness." *United States v. Pugh*, 945 F.3d 9, 24 (2d Cir. 2019) (citing *Gall*, 552 U.S. at 51). *See also id.* at 28 ("Whether the sentence is consistent with the parsimony clause of section 3553(a) is a question of substantive reasonableness."); *Park*, 758 F.3d at 200 ("In determining whether a sentence shocks the judicial conscience or is otherwise unsupportable, we use as our lodestar, the parsimony clause of 18 U.S.C. § 3553(a), which directs sentencing courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)[.]" (internal citations and quotation marks omitted)).

*x*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

————

UNITED STATES OF AMERICA,

*Appellee,*

-vs-

NICHOLAS DEFELICE,

*Defendant-Appellant.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## PRELIMINARY STATEMENT

This is a case about a competitive marksman with no prior criminal record. He stands convicted of possessing three National Firearms Act ("NFA") firearms without paying the requisite tax and properly registering them. Those firearms included two short barrel rifles and a silencer. He was convicted after the district court denied his motion to dismiss based upon the recent case of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Though he credibly disavowed any interest in continuing to own firearms—lawfully or unlawfully—he was sentenced to a year and a day in prison. The principle interest furthered by the sentence, cited by the district court, was general deterrence.

Subsequent to DeFelice's conviction and sentencing, two important legal events happened. First, the government reversed its position in another NFA firearms case and told the Fifth Circuit that silencers are *not* firearms within the meaning of the NFA and their prohibition violates the Second Amendment. Second, Congress abolished the $200 tax stamp condition precedent to owning or transferring NFA firearms in the recently passed One Big Beautiful Bill Act of 2025; that provision takes effect on January 1, 2026.

Mr. DeFelice appeals two issues in this case. First, he appeals the denial of his motion to dismiss the indictment pursuant to *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). He reserved the right to do so in his plea agreement. He

1

contends that the district court erred in denying his motion. Moreover, he contends that the government's reversal of position in *United States v. Peterson,* No. 2:22-cr-231 (E.D. La.), warrants a remand for reconsideration of this new legal data. Second, he contends that his sentence is substantively and procedurally unreasonable. The district court found that DeFelice had been specifically deterred and largely rehabilitated and gave him a below guidelines sentence. However, the district court nonetheless relied upon DeFelice's possession of a high-capacity magazine that was *legal* pursuant to federal law, but illegal pursuant to state law, and a crude statement by DeFelice evincing knowledge of this fact to conclude this was a purposeful act warranting a strong message of general deterrence. Moreover, where Congress has now abandoned the $200 tax stamp, and DeFelice argued poverty as sentencing mitigation, there is no general deterrent interest to be served by incarcerating him. Accordingly, a remand is warranted consistent with the interests identified in *Pepper v. United States*, 562 U.S. 476 (2011).

## STATEMENT OF FACTS

### A.    Investigation, Charges, And Arrest.

Nicholas DeFelice was indicted in July 2023 on two firearms counts. Count One charged him with engaging in the business of dealing in and manufacturing firearms without a license in violation of 18 U.S.C. Sections 922(a)(l)(A), 923(a), and

2

924(a)(l)(D). Count Two charged him with possession of unregistered national firearms act firearms in violation of 26 U.S.C. Sections 5841, 5845, 5861(d), and 5871.

DeFelice was a member of the International Defensive Pistol Association (IDPA) and an accomplished target shooter. As part of that hobby, he began working on various types of guns and manufacturing them from parts. He eventually started selling guns as a business. Eventually a concerned citizen contacted the ATF when they came to him to have some work done and he refused to give them his federal firearms license (FFL) number. SD 5. ATF could find no record of an FFL for Mr. DeFelice and had an undercover officer approach him to order a firearm from him, one that would fall under the definition of "short-barreled rifle" in 26 U.S.C. if it did not have a stock attached. DeFelice agreed to supply the rifle for cash, along with a high-capacity magazine which he acknowledged would be illegal. Specifically, he provided the undercover a 30-round magazine and which he identified as "'highly [expletive] illegal'" and "'if anyone asks, you found it.'" SD 44. This occurred on January 11, 2022.

The ATF obtained a search warrant for DeFelice's home and served it on February 17, 2022. They found numerous weapons and parts throughout the house. Most critically, they found two firearms that met the definition of short-barreled rifles as well as a silencer (or suppressor). Each was regulated under the National Firearms

Act of 1934 ("NFA"). Based upon the prior investigation and the fruits of the search, DeFelice was indicted.[1]

Count 1 and the supporting discovery accused Mr. DeFelice of building a Dark Storm Industries, model DS-15, multi-caliber firearm for a set of undercover taskforce officers for the ATF. Mr. DeFelice had a business card that he distributed to people in the gun community and advertised his services on Facebook. SD 4-5. The undercovers approached him in December of 2021 and arranged the purchase of the aforementioned firearm for $2,500. During that time, Mr. DeFelice gave them a tour of his home and workshop where he worked on his numerous guns. Investigators noted that DeFelice had a valid Connecticut pistol permit with 173 transfers on it between May 2013 and May 2021.

Count 2 alleged that DeFelice possessed two short-barreled rifles and a silencer that were subject to National Firearms Act registration requirements. It was alleged that he did not comply with the NFA insofar as he had neither paid the $200 tax stamp nor registered the firearms with the ATF.

## B.    Litigation and Defense of the Case.

This case was litigated at the Rule 12(b)(3) stage of the case. The defense turned on the legality of that National Firearms Act in light of the *Bruen* decision. Following the district court's denial of his motion to suppress, DeFelice plead guilty to Count 2

4

---

[1] DeFelice received a target letter that Spring of 2022. In July of 2023, he was indicted.

of the indictment conditional upon his right to appeal the denial of his motion to dismiss.

1.  Defense and government motions.

DeFelice moved to dismiss both counts of the indictment on October 18, 2023. He did so pursuant to *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). That case was decided while DeFelice was subject to a target letter.  He argued that the weapons in question were "arms" within the meaning (and protection) of the Second Amendment, and "the relevant provisions of the NFA are inconsistent with our Nation's historical understanding of firearms regulation as required by *New York State Rifle & Pistol Ass'n v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022)." (Because Count One was later dismissed as part of a plea bargain, this appeal only treats the actions related to Count Two.) (The plea agreement reserved Mr. Defelice's right to appeal the issue of the denial of the motion to dismiss Count Two.)

Specifically, the motion contends that the government cannot point to a Founding era analogue of regulations related to short-barreled rifles or suppressors. *See* A 31-32. The motion notes that there were no founding-era restrictions on short-barreled weapons or suppressors, which did not exist until a hundred years later, or any restrictions at all before the passage of the NFA in the early 20th century, and that the

5

strictures of the NFA were so onerous that they effectively strangled civilian possession of NFA arms more than a hundred years after the founding.[2]

This is hardly surprising. The purpose of the NFA was to restrict as far as possible the use and possession of "dangerous" weapons like sawed-off shotguns, silencers, machine guns, and other destructive devices. But the drafters knew that simply banning certain types of firearms would run afoul of the Second Amendment, so they constructed the NFA as a taxation measure.[3] *See* A 29-32.

DeFelice's motion surveyed the history of the NFA. It noted that at first it regulated trade in silencers and short-barreled rifles as a way to effectively ban their possession, and was later amended to make possession of them legal, but only if they were possessed and transferred in compliance with the NFA. Tellingly, the $200 tax stamp that was established in 1934 following the St. Valentine's Day Massacre was never adjusted to inflation. In 1934, $200 made these weapons prohibitively expensive; in 2021, it was something short of a nuisance fee for many middle-class gun purchasers who were already spending hundreds, if not thousands, of dollars for these firearms.

6

---

[2] It wasn't until 1968 that the NFA was modified from a restriction on commerce in NFA arms to a restriction on simply possessing them, even if they had not travelled in interstate commerce, unless they were registered. *See* National Firearms Act Amendments of 1968, Pub. L. No. 90-618, § 5822, 82 Stat. 1213, 1228 (codified at 26 U.S.C. § 5812(1), (6)), Congress also subjected persons who "[m]ake" their own covered firearms to the NFA's tax and regulatory scheme. *Id.*

[3] The original NFA was upheld as a taxing measure in *Sonzinsky v. United States*, 300 U.S. 506 (1937). The Supreme Court upheld the NFA on the <u>sole</u> basis that the registration fees it included were a tax and explicitly disavowed any consideration of other issues.

The government filed its opposition to the motion on November 8, 2023. It argued that "DeFelice's motion fails at step one: the plain text of the Second Amendment does not cover the manufacture or sale of firearms. It does not protect the possession of short-barrel rifles or silencers either. This is fatal to DeFelice's claim, and the analysis should stop there. But even if the Court proceeds to the second step of the analysis, it must still find the challenged statutes constitutional because they are consistent with historical firearm regulation in this country." A 49. Also, that "[w]ithout any acknowledgment of his burden at step one, DeFelice presumes the dealing and manufacturing of firearms and possession of short-barrel rifles and silencers are similarly covered by the 'plain text' of the Second Amendment. DeFelice is wrong as to this fundamental point." A 53.

As to whether there are historical analogues the NFA's registration requirements, the government's reply relied on two arguments: First, that the "regulation" required by the NFA is so minor that it does not infringe the right to bear arms, even if suppressors and short-barreled rifles are arms, and second, that colonial-era restrictions on, e.g., the export of firearms or gunpowder from one colony to another were a sufficient historical analogue to validate the NFA.

7

In a reply filing, DeFelice argued that the government's cited statutes were all inapposite:

> Many relate to the broader prohibition on transferring arms to Native Americans or others deemed unreliable, a race- or faith-based regulation that is incompatible with modern understanding of Equal Protection. For example, the government cites a ban on selling arms to anyone who was not a "loyal subject[]"; similarly the Massachusetts statute banning export of gunpowder was prefaced by concerns about arms and powder reaching Native tribes. Others, such as the cited Maine statute requiring gun barrels to be "proofed," are clearly safety or consumer protection laws, not restrictions on firearms per se. That statute requires a manufacturer to pay twenty-five cents for the work of the proofer, plus "the expense of the powder necessary for that purpose" (i.e. test firing the barrel to see if it would explode). Laws of the State of Maine 546 (1830). The reference to the ban on gunpowder exports in the Public Records of the Colony of Connecticut, v.15, is from a section that also requires the construction of new gunpowder mills; it is thus a statute promoting the production and availability of gunpowder, not one regulating it as a means of controlling access to it by the citizens of the colony.

> Contrast the concerns underlying those statutes with those of the National Firearms Act: "It is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used." *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517, 112 S. Ct. 2102, 2109, 119 L. Ed. 2d 308 (1992). In other words, Congress sought to minimize access to those weapons. The statutes cited by the government were largely designed to assure access to weapons and gunpowder (by the right kind of people), and assure that weapons were safe to operate. As such, the government's examples are not reasonable historical analogues for the NFA. At a minimum the government has not given the Court enough historical context for those statutes to show analogy the NFA; the fact of regulation is not nearly so important as the intended impact of those regulations.

A 71-72.

8

2. <u>The district court denies the motion to dismiss.</u>

On June 17, 2024, the District Court (Williams, J.) denied the motion.[4] Judge Williams found that neither short-barreled rifles nor suppressors fell within the ambit of the Second Amendment's protections. The court found that, with regard to short-barrel rifles, "*Heller* clearly held that: 'the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.' 544 U.S. at 625; *see United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (holding that short-barreled rifle is a type of 'concealable weapon' which is 'likely to be used for criminal purpose'"). It also held that suppressors "do not fall within the category of bearable arms," citing the logic *Garland v. Cargill*, No.22-976, 2024 WL 2981505 (June 14, 2024) for the proposition that "Silencers do not have triggers, nor can they be fired or discharged by themselves." The order concluded with "the court finds that the unlicensed possession of short-barreled rifles or silencers is not protected by the plain text of the Second Amendment. The motion to dismiss Count Two of the indictment is denied." A 91. The order denying the motion to dismiss did not address the question of whether the NFA restrictions would be constitutional if suppressors and short-barrel rifles were found to be protected as arms by the Second Amendment.

---

9

[4] The Order denying the motion to dismiss also considered and denied a motion for a bill of particulars; that issue was mooted by the subsequent plea bargain.

### C.     Conviction And Sentencing.

The parties resumed plea discussions following the denial of what would have been a dispositive motion to dismiss. On October 7, 2024, DeFelice entered a conditional plea of guilty to Count Two of the Indictment. He did so pursuant to a written plea agreement that stipulated that "defendant expressly reserves his right to appeal the portion of the district court's June 17, 2024 order (Docket No. 37), denying the defendant's motion to dismiss the indictment (Docket No. 18)." A 92. The plea agreement reserved each parties' rights to disagree about guidelines calculation based upon the number of guns at issue.[5]  Following his plea of guilty but prior to his sentencing, the case was transferred from District Judge Omar A. Wiliams to Chief District Judge Michael P. Shea; hence, Judge Williams decided the motion to dismiss which Judge Shea conducted the sentencing.

The PSR calculated a guidelines range of 24-30 months and that was the operative calculation used at sentencing. A 145-46. DeFelice had no criminal history but was not eligible for the Guidelines reduction under U.S.S.G. § 4C1.1 for zero-point offenders because the offense involved a firearm.

The defense in its sentencing memorandum argued for a non-guidelines sentence of probation. A 101-24. It relied upon DeFelice's profoundly traumatic childhood: For example, a stepfather had kicked him in the eye so hard it crushed his eye socket and

10

---

[5] The arguments were negligible or peripheral at sentencing and not pursued in this appeal.

required a glass eye. It relied upon the fact that the one source of safety, fun, and stability DeFelice had in his life was target shooting and gunsmithing. DeFelice's adult life was no easier: he had six children at a young age. The youngest of those children was seriously and chronically ill from birth. In addition to the stress and burden of her needs, DeFelice was beset my medical debt which he paid for by selling his guns. With respect to the sentencing guidelines, it argued for a variance pursuant to *United States v. Kimbrough*, 552 U.S. 85 (2007). It did so on the basis that DeFelice was being prosecuted on what was, essentially, a vicarious liability theory of firearms possession and sale. Where Congress has acted to affirmatively protect gun manufacturer profits, using preemption powers, from vicarious liability in the face of more than 10,000 gun deaths per year and countless mass shooting, incarcerating people like DeFelice would yield a sentencing disparity just as insidious as the 1:100 crack to power cocaine sentencing ration. A 111-19. Accordingly, it argued that disarmament by way of a felony conviction, in conjunction with bona fide remorse and rehabilitation, and probation was sufficient but not greater than necessary.

The government, to its credit, sought a below guidelines sentence that still included a period of incarceration. A 125-131. It focused on DeFelice's intentionally building and selling weapons, credited his traumatic upbringing, and noted the need to send a message and deter similar such conduct.

11

The defense attempted to refine its arguments at sentencing. First, it noted that the offense was a mixture of *malum prohibitum* and *malum in se*, in that people are allowed to possess, manufacture, and sell NFA firearms as long as they comply with registration requirements and pay the requisite fees. A 149-50. The court pushed back, noting that DeFelice had made statements to the undercover officers showing he knew of the illegality of the high-capacity magazine and of his obligation to pay sales taxes on the weapons.[6] A 150-51. The court added "there's one important difference between

12

---

[6] Specifically, the court directed defense counsel to paragraph 9 of the PSR and said:

> Mr. Defelice told the undercover he did not have any 10 round-magazines, so he provided the undercover with a 30 round magazine, which Mr. Deflice identified as highly expletive illegal, end quote, and, open quote, If anyone ask, you found it, end quote.

> Now, we all know that's not even part of the charged conduct here. It may or may not be part of the relevant conduct, but it doesn't matter because I can consider it under Section 3553(a) under a variety of rubrics: background and characteristics, circumstances surrounding the crime, etc. You agree so far?

> Defense Counsel: yes.

> District Court: Now, I don't think this is a malum pro se [sic] crime in anyway way, shape, or form. I think that plus—I'll point to another source. [Directing to PSR page 5].

> In a recorded conversation they discussed various aspects of the firearms to be built, including length, caliber, and color. Mr. Defelice advised that the price would be $2500 required up front and that case was the, quote, absolute best way, end quote, as it avoided sales tax and potential scrutiny on the purchase.

> If you add that to what I read previously, this looks like a person who knew what he was doing was illegal, and so it's not at all—and I'm saying this so you can push back. You know how I do things.

this and a tax case, which is selling a 30-round magazine is a lot more dangerous than cheating on your taxes." A 152. Defense counsel noted the problematic nature of the remarks and the potential danger of large magazines: "I'm not saying that this is the equivalent of ripping a tag off of a mattress. I cannot put enough distance between myself and that. Simultaneously, there are dangerous activities that people are permitted to engage in provided that they do the paperwork correctly." A 153. Defense counsel then moved on to Mr. DeFelice's character – his disillusionment with guns, his need to support his six children, his recent job loss which lowered his income, and his recent engagement in mental health therapy, which has led him to be "much more present with the family." A 154-59.

Mr. DeFelice spoke about how he had previously seen guns as a harmless medium of competition and income: "To me, I never viewed a firearm as a dangerous item. I never did. I never respected them for what they were. To me, they were a tool, um, for competing. They were my recreational use. And I never fully understood the dangers of firearms and the dangers they can present in the world." A 161. Counsel also noted that "he was into target shooting and not into hunting and has been very antiviolence throughout all of this. And I think it may have something to do with the violence he's experienced in his life." A 164.

---

13

Defense counsel essentially acknowledged that this was the biggest wart on the case and made some attempt to argue substantial compliance insofar as Mr. DeFelice had registered numerous pistols transfers according to the Connecticut process. A 152-55.

The Government spoke about the goals of federal firearms regulations and noted that DeFelice had not been transferring weapons to prohibited persons: "I don't want to downplay the seriousness of the offense, but it could be a lot worse." The prosecutor also noted DeFelice's "pretty serious trauma" in his childhood, and that his current family circumstances "temper our sentencing position as well." A 168. The court had noted that it would determine a final sentencing Guidelines range because he did not intend to impose a sentence within the range, and neither party objected. It noted the Supreme Court's very recent decision in *Bondi v. Vanderstock*, 604 U.S. ___ (2025), No. 23–852 (Mar. 26, 2025), in which Justice Gorsuch, writing for the majority, noted the government's tracking and tracing interest in firearms pursuant to the Gun Control Act of 1968. A 164. It noted that "Nothing prohibited [DeFelice] from [possessing and selling NFA firearms]. He just needed to fill out the paperwork and *pay the proper taxes*." A 165 (emphasis added). Neglecting to do that deprived the government of its public safety interest in tracking the movement of these guns.

The court then articulated its sentencing conclusions. It noted DeFelice's lack of a criminal record, his engagement with mental health treatment, and his knowledge of the illegal nature of his actions. A 171-72. It stated that "specific deterrence is not a necessary component to consider here." A 173. Nonetheless, people "certainly cannot knowingly do things that are against the law that put people in such danger. I know

14

that's the man you were, but I have to sentence you for that too." A 174. The Court

very clearly state the general deterrent interest it was relying upon:

> Unfortunately, promoting respect for the law, general deterrence, promoting respect for the law is part of punishment. And reflecting the seriousness of the offense are very necessary purposes in this case because—you heard me say it to [defense counsel]—this sentence has a role to play because what's going to happen probably, Mr. Defelice, is this is how it works: The U.S. Attorney's Office will do a press release. That's part of their job. Just to be clear, it's part of their job. It's not to brag. It's part of their job in doing justice. They'll probably do a press release or the ATF will do a press release. And, again, it's part of their job.

> And it won't have the richness of this proceeding in it. IT will just say some of it. And some newspaper will pick that up maybe or maybe not. And I'm sorry will have on your family, but it's necessary to send a message to people that they cannot do this because you heard the colloquy between [defense counse]. And they certainly cannot knowingly do things that are against the law that put people in danger. I know that's the man you were, but I have to sentence your for that too.

A 173-74.

It then sentenced Mr. DeFelice to 12 months and one day in prison, to be

followed by 2 years of supervised release. A 175.

A timely notice of appeal was filed April 14, 2025. A 187.

## D.    Legal And Legislative Facts Subsequent to Sentencing.

This would normally end the recitation of facts and procedural history. But two

legal events occurred shortly after DeFelice's sentencing that bear on this case. First,

George Peterson, a gun dealer in the Eastern District of Louisiana, was charged with

15

possessing a suppressor that was neither taxed nor registered under the NFA, in *United States v. Peterson*, No. 2:22-cr-231 in the Eastern District. Like Mr. DeFelice, he filed a motion to dismiss the indictment on the grounds that "…the National Firearms Act (NFA) requiring registration and the payment of a tax on the device possessed by the defendant is an unconstitutional infringement on those rights." *Id.* at ECF No. 43 (E.D. La. July 10, 2023). The district court denied the motion and, also like DeFelice, he entered a conditional guilty plea that allowed him to appeal denial of his motion to dismiss. He was sentenced on January 9, 2024, and Peterson appealed to the Fifth Circuit, in case no. 24-30043.[7]

After briefing and oral argument, the Fifth Circuit issued an opinion affirming the District Court's denial of the motion to dismiss. As in this case, Peterson argued that suppressors fell under the protection of the Second Amendment, and the government argued they did not, but that even if they did the NFA was not unconstitutional. Peterson filed a motion for rehearing en banc, attaching a copy of the decision. The government opposed it. But before any rehearing could be considered, the government filed a supplemental response in which they announced that:

> As part of its broader evaluation of its litigating positions in Second Amendment cases, *see* Executive Order 14206, *Protecting Second Amendment Rights*, the United States has re-evaluated its position in this case. In the view of the United States, the Second Amendment protects

16

---

[7] Peterson argued two issues in his appeal; one was the suppressor and the NFA, the other was a challenge to the denial of a motion to suppress the fruits of the search that had turned up the suppressor. The latter has no connection to this case.

> firearm accessories and components such as suppressors. As a result, restrictions on the possession of suppressors burden the right to bear arms, and a ban on the possession of suppressors or other similar accessories would be unconstitutional. The government's earlier argument to the contrary was incorrect.

Supplemental response to motion for rehearing en banc, Docket No. 135 at 4 (May 29, 2025). Nonetheless, although the government continued to argue that the appeal should be denied, "although rehearing en banc is unwarranted, the Court should grant panel rehearing to correct the panel opinion's analysis."

The panel withdrew the decision on June 17, 2025 – after Mr. DeFelice had filed his notice of appeal in this matter. *See id.* at Docket No. 141. On June 25, the Circuit dismissed the motion for rehearing as moot. As of July 28, 2025, there has been no further action on the docket.

Second, in early July, Congress passed legislation known as "The One Big Beautiful Bill Act," (OBBBA) which was signed into law on July 4, 2025, *infra*. Among the actions OBBBA took was to remove the $200 tax required for firearms registration. As of January 1, 2026, an individual may possess an NFA firearm so long as he registers it, free of charge, with the ATF. When the government stated that DeFelice "just needed to fill out the paperwork and pay the proper taxes," that will change as of January 1, 2026. Where DeFelice noted his financial destitution at sentencing, this changes the equations. Moreover, gun rights group immediately filed suit alleging that absence of a tax seemingly undermines that reasoning of *Sonzinsky*

17

*v. United States*, 300 U.S. 506 (1937) where the NFA was upheld as a tax, not a freestanding firearms registry. *Silencer Shop Foundation et al v. Bureau of Alcohol, Tobacco, and Firearms et al*, 6:25-cv-56-H (N.D. Tex. 2025), was filed on July 4, 2025, in the Northern District of Texas and fifteen states' attorneys general have joined the suit as plaintiffs. Similarly, *Brown et al v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, et al.*, No. 4:25-cv-01162, Doc. No. 1 (E.D. Mo. Aug. 1, 2025) was filed on August 1, 2025 in the Eastern District of Missouri. Plaintiffs in that case include the National Rifle Association (NRA) and similar gun rights groups. The government has not yet filed a response in either case.

## SUMMARY OF THE ARGUMENTS

This appeal concerns two primary issues. The first concerns the defendant's conviction, the second his sentence.

First, Mr. DeFelice appeals the district court's denial of his motion to dismiss a two-count indictment that alleged violations of the National Firearms Act and manufacturing firearms without a license. He filed that motion pursuant to *New York State Rifles & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). This appeal is about whether the Court of Appeals can or should rule on an issue that the district court chose not to address, on a basis that was later disavowed by the government, and where subsequent changes to the statute of conviction place the constitutionality of the conviction in serious doubt. Specifically, the government has disavowed some or all of the position it took in this case in a Fifth Circuit case called Peterson; and Congress has repealed the $200 tax Defelice did not pay effective January 2026. DeFelice contends that (1) the Court ought respectfully remand this matter for full briefing on those issues where no alternative grounds for affirmance were addressed; (2) the Court cannot decide that issue without briefing; or, alternatively, (3) the Court should reverse the district court's denial of the Motion to Dismiss as to both counts in reliance upon Bruen.

Second, DeFelice contends that his sentence was procedurally and substantively unreasonable. The district court relied upon his possession of a high-capacity magazine that was legal pursuant to federal law, but illegal pursuant to state law as the primary

19

basis to sentence him to a term of incarceration. DeFelice contends that this defies the acquitted conduct analysis and generates unwarranted sentencing disparities because it ties an NFA offense to the state of conviction, not crimes against the United States. This constitutes plain error. Additionally, four months after DeFelice was sentenced, Congress repealed the $200 NFA tax stamp that DeFelice neglected to purchase. Accordingly, remand is warranted for resentencing to consider these issues.

## <u>ARGUMENT</u>

**I.     The District Court's denial of the motion to dismiss cannot stand now that the government has conceded that NFA firearms are protected by the Second Amendment.**

The order denying Defelice's motion to dismiss was clear and focused: it addressed <u>only</u> the question of whether NFA firearms were "arms" subject to the protections of the Second Amendment. In light of the Government concession in *Peterson*, that decision is clearly no longer tenable. As such, the only remaining question is whether, under *Bruen*, the constraints of the NFA can be justified on the basis of historical practice.

In *Peterson*, however, the government asserted a new position that silencers and short-barreled rifles are in fact arms under the Second Amendment. The government did not limit that statement to the case at hand, nor did it otherwise qualify or hedge the new position, nor has it withdrawn that position.

20

The government's about-face on this issue in *Peterson* raises serious questions about the entirety of the District Court's order on this issue. The district court's opinion does not address the legality of NFA restriction in the Second Amendment context, leaving nothing about the District Court's decision left to analyze.

**II.    This Court cannot affirm the denial of the motion to dismiss on any alternate grounds, as no alternate grounds were discussed in the denial order, and this Court should not attempt to decide the constitutionality of the NFA restrictions without the benefit of full briefing and hearings in the District Court.**

> We generally refrain from considering issues not decided by the district court. *See United States v. Gomez*, 877 F.3d 76, 92 (2d Cir. 2017). Though we have "broad discretion" to consider issues "raised, briefed, and argued in the district court," we are "more likely to exercise our discretion (1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding."

*Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 184 (2d Cir. 2021). Notably, however, *Zherka v. Bondi*, an immigration case, the Second Circuit did decide a *Bruen*-related issue that was not addressed below, in part because the parties had briefed and argued *Bruen*-based arguments as part of the appeal (*Bruen* having been decided between the District Court actions and the appeal): "We … have the full benefit of the parties' respective *Bruen*-based arguments before us. It would be inconsistent with the interests of judicial economy to remand this case to the district court, only for the parties to brief the same legal issues again." *Zherka v. Bondi*, 140 F.4th 68, 74 (2d Cir. 2025). But in that case, the panel also noted that "[t]he parties dispute only whether

21

certain historical analogues establish a history and tradition of firearms regulation in this country sufficient to uphold Section 922(g)(1). That dispute raises only questions of constitutional interpretation, which we review *de novo* ... In the absence of material questions of fact, we are just as well equipped as the district court to resolve the outstanding legal issues in this case." *Id.*

There are multiple reasons why this panel should not attempt to resolve the NFA issue instead of remanding. First, there is no chance that a "manifest injustice" would occur were this issue remanded for a new hearing in the District Court. Mr. DeFelice is out on bond, awaiting his surrender date, and the District Court could easily adjust that date to accommodate any time needed for new briefings and hearings (not to mention the possibly edifying results of the *Peterson* case).

More importantly, in *Zherka*, the parties in that case had time to brief *Bruen* issue before the appellate panel. Whether or not the NFA's restrictions are legal if NFA firearms are arms is neither a purely legal issue (because it hinges on the factual question of whether NFA registration requirements mirror founding-era restrictions), is not well settled now, and will be even less clear in a few months. Here we have two new issues – the government's concession that the weapon in question are covered by the Second Amendment and the impending changes to the structure of the NFA.

In the recent budget bill, the tax on suppressors and short-barreled rifles in the NFA was permanently reduced to zero. *See* Sec. 70437, PL 119-21 ("REDUCTION

22

OF TRANSFER AND MANUFACTURING TAXES FOR CERTAIN DEVICES")

(leaving in place tax on machineguns). That section goes into effect January 1, 2026.

Several firearms advocacy organizations are now asserting that the elimination of the "tax" element of the NFA puts its constitutionality in doubt. In *Sonzinsky v. United States*, 300 U.S. 506 (1937), the Supreme Court upheld the NFA on the <u>sole</u> basis that the registration fees it included were a tax. That case's reasoning was applied (and that case was cited in), the SCOTUS upholding of Obamacare case, *National Federation of Independent Business v. Sebelius*, 597 U.S. 519, 567 (2012) ("we have upheld such obviously regulatory measures as taxes on selling marijuana and sawed-off shotguns.") (citing *United States v. Sanchez,* 340 U.S. 42, 44-55 (1950); *Sonzinsky v. United States,* 300 U.S. 506, 513 (1937)).

Does the elimination of the tax aspects of the NFA eviscerate the NFA? That is an issue that has not previously been raised, much less discussed, in this case, *Peterson*, or others bearing on the NFA – almost certainly because the budget bill only passed a few weeks ago. But the removal of the tax aspects of the NFA leaves the constitutionality of the NFA in a precarious state.

The constitutionality of the NFA was decided in *Sonzinsky v. United States*, 300 U.S. 506 (1937). Like the Affordable Care Act ("AFA"), 42 U.S.C. § 18001, which was found to be sustainable because the penalty for not maintaining certain levels of health care coverage was found to be a tax, not a punishment, in *National Federation*

23

*of Independent Business v. Sebelius*, 567 U.S. 519 (2012), the NFA was found to be a valid exercise of government power because it was essentially a tax bill. The question is now, with the elimination of the taxes on short-barreled rifles and suppressors, can the NFA's regulation of those weapons stand?

This parallels the question in *California v. Texas*, 593 U.S. 659 (2021), where the 2017 elimination of the ACA "tax" undercut the logic of *Sebelius*. There, the Supreme Court, did not reach that argument, finding that none of the plaintiffs had standing to challenge the ACA as it stood, because there was no action the government would take to enforce the then-nominal "requirement" that they maintain ACA-compliant health care coverage. With the majority opinion noting that "[w]ithout a penalty for noncompliance, §5000A(a) is unenforceable. The individuals have not shown that any kind of Government action or conduct has caused or will cause the injury they attribute to §5000A(a). The Court's cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened enforcement, whether today or in the future," adding that "[u]nenforceable statutory language alone is not sufficient to establish standing." *Id.* at 660.

But DeFelice and Peterson, and others facing jail time like them, will clearly have standing to challenge the continued validity of the NFA because they face imprisonment for noncompliance, which is surely a "kind of Government action or conduct [that] has caused or will cause [] injury." *Id.*

24

In fact, several gun rights organizations have already filed just such an attack on what is left of the NFA. *See Brown v. ATF*, No. 4:25-cv-1162, Doc. No. 1 (E.D. Mo. Aug. 1, 2025). *Brown* argues that the government concession in *Peterson*, combined with the removal of the taxes on suppressors and short-barreled rifles, means restrictions on those types of arms can now no longer be justified as an exercise of taxing authority:

> This regulatory regime no longer comports with Congress's constitutionally enumerated powers. While the NFA's regulations may have been permissible in support of the statute's taxes on making and transferring firearms, that justification no longer remains for items whose making and transfer are no longer taxed. To the extent that the NFA imposes requirements on making, transferring, receiving, possessing, or otherwise using untaxed firearms, it cannot be justified as an exercise of any other Article I power. Accordingly, the NFA is unconstitutional as to the untaxed firearms.

*Id.* at 3.[8]  The complaint also notes that neither short-barreled rifles nor suppressors can be said to be "unusual" weapons anymore – the ATF notes that over 800,000 of the former have been registered up to 2024, and over three million suppressors.

The twin effects of the changed government position and the elimination of the basis for the previous understanding of the constitutionality of the NFA in *Sonzinsky*

---

25

[8] A useful review of the history of the NFA can be found at: Oliver Krawczyk, *Dangerous and Unusual: How an Expanding National Firearms Act Will Spell Its Own Demise*, 127 DICK. L. REV. 273 (2022), https://insight.dickinsonlaw.psu.edu/dlr/vol127/iss1/8. The article notes that "[t]o this day, the NFA, a gun control law, remains codified in the Internal Revenue Code. *See* National Firearms Act of 1934, Pub. L. No. 73-474, 48 Stat. 1236 (codified as amended in scattered sections of 26 U.S.C.)" *Id.* at n.21.

make the continued viability of the NFA provisions that supported Mr. DeFelice's conviction dubious at best. This Court should not attempt an initial inquiry into the validity of the denial of the Motion to Dismiss where the district court's rejection of Second Amendment coverage has been negated by the government, and the contents of the recent Budget bill have thrown the validity of the charges against Mr. DeFelice into doubt. At a minimum, the issue should be remanded for full briefing and argument.

## III. If the panel does find the issue ripe for resolution without remand, the weakness of the government's proffered historical antecedents to the NFA will require reversal.

The government, in its opposition to the motion to dismiss, states that:[9]

> the NFA's registration and taxation requirements do not prohibit manufacturing or selling firearms. Instead, the statute at issue merely imposes record-keeping and attendant payment requirements to document the items to help ensure that they can be traced. This falls squarely within the bounds of the historical regulation of firearms. The practice of the colonies and the United States of regulating commerce in firearms provides a sufficient historical analogue to the NFA.

A 66. However, that argument fails for two reasons. First, the founding-era statutes cited by the government all relate to the trade in firearms, or to the manufacture thereof, which would be pertinent if Count 1 had not been dropped as part of the plea deal.

26

---

[9] Counsel for Mr. DeFelice acknowledges that there may be binding adverse precedent by which the panel is bound. *See Antonyuk v. James*, 120 F.4th 941, 961 n.9 (2d Cir. 2024) cert. denied, 145 S. Ct. 1900, 221 L. Ed. 646 (2025) (noting challenges to NFA in *United States v. Miller*, 307 U.S. 174 (1939) and effect of *Heller* on Second Amendment litigation). To the extent that this is binding, Defelice respectfully offers these arguments for the purposes of preservation if not persuasion. *See Klimas v. Lantz*, 531 Fed. Appx. 6, 8 (2d Cir. 2013) ("As a lower court, we are mindful that we should not "'conclude that the Supreme Court's more recent cases have, by implication, overruled an earlier precedent.'") (quoting *Agostini v. Felton*, 521 U.S. 203, 207 (1997)).

Secondly, as noted in the defense response filing, all of those statutes had as their purpose the regulation and even encouragement of the firearms industry (promotion of gunpowder production; safety regulations on the testing of gun barrels (of any length!). None, aside from the race, religion, or political outlook bars that would anathema to today's Constitution, related to who could possess such weapons.

IV.     **The Sentence Imposed by the District Court Was Substantively and Procedurally Unreasonable Because the District Court Relied Upon Federally Legal Conduct to Impose a Term of Incarceration and Has Since Abandoned the $200 Tax Mr. Defelice Neglected to Pay.**

Mr. DeFelice's sentence is both substantively and procedurally unreasonable. At a minimum, this Court should remand so that the district court can resentence Mr. DeFelice in light of Congress's recent decision to abolish the $200 tax stamp that Mr. DeFelice did not pay in this case. All told, the district court's sentence is procedurally unreasonable because it (1) committed plain error when it relied upon Mr. DeFelice's possession of a device that was a high capacity magazine under Connecticut law as the primary basis for the need for deterrence; (2) created unwarranted sentencing disparities when it relied upon relevant conduct that is neither federally illegal, nor illegal in all states; and (3) there is no deterrent interest in incarceration where Congress has abandoned elements of the statute under which DeFelice was convicted. He addresses each argument herein.

27

A. **The District Court Committed Plain Error When It Relied Upon Mr. DeFelice's Possession of a Magazine That Was Unlawful Pursuant to Connecticut but Not Federal Law to Sentence Him to Incarceration.**

Had Mr. DeFelice committed this offense in Texas his relevant conduct would have been legal. Congress permitted the Public Safety and Recreational Firearms Use Protection Act, better known as the Federal Assault Weapons Ban, to expire in 1994. Since then, high-capacity magazines have been permitted under federal law. Fourteen states, including Connecticut, have acted to ban some version of a "high capacity" magazine. *See, e.g.,* Everytown Research & Policy, *Which states prohibit high-capacity magazines* (Jan. 15, 2025), https://everytownresearch.org/rankings/law/high-capacity-magazines-prohibited/; Connecticut General Statute § 53-202w (prohibiting magazines that hold more than 10 rounds of ammunition). Indeed, this Court recently denied a preliminary injunction seeking to enjoin enforcement of Connecticut's high-capacity magazine ban on the grounds that the statute was likely constitutional. *National Ass'n for Gun Rights v. Lamont*, No. 23-1162, 2025 WL 2423599 (2d Cir. 2025).

This argument presupposes the constitutionality of the Connecticut statute. The issue is to what extent a federal court may punish conduct that is legal at the federal level but not the state level? To put a finer point on it, not only was Mr. DeFelice's conduct as to the high-capacity magazine legal at the federal level, it is also legal in 36 other states. Mr. DeFelice presumes that the *NAGR, supra,* case was correctly decided

28

and that Congress or state legislatures may regulate high-capacity magazines without running afoul of the Second Amendment. However, Congress and 36 state legislatures have chosen not to do so. This makes the issue *sui generis* in comparison to customary rule permitting sentencing courts to consider state offenses.

Mr. DeFelice should not be more culpable in Connecticut than he would be in Maine, New Hampshire, or Pennsylvania (all states that have not adopted bans on high-capacity magazines).[10] But according to the district court's sentencing analysis, that is precisely what would happen. Consider a defendant similarly situated to Mr. DeFelice but for the fact that he lived in Maine, a state that has no prohibitions on high-capacity magazines. The defendant possesses and conveys NFA firearms to the same extent and scope that Mr. DeFelice did. He also possesses and conveys a high-capacity magazine. But because those magazines are not illegal in Maine, he makes no comment about their legality and commits no state offense by possessing them. Given that "innocent" version of the same offense, he receives a much lesser sentence.

This is clearly the predicate for an unwarranted sentencing disparity. Mr. DeFelice committed an offense against the United States. But that offense is the same whether it was committed in the Carolinas or Connecticut. To rely upon an

29

---

[10] Indeed, the 117th Congress passed the Bipartisan Safer Communities Act of 2022, Pub. L. 117-159, (BSCA of 2022) which prohibits the unlawful transfer of a firearm from a permissive gun state to more restrictive gun state. *See* 18 U.S.C. § 933(a)(1) and 933(b). However, that was neither the law at the time of Mr. DeFelice's conduct, nor was there evidence he transferred the firearms across state lines. That interest is not present in this case.

idiosyncratic, or at least minority, state law to sentence a person to incarceration leads to a sentence based upon geography not justice. This is an unwarranted sentencing disparity that constitutes plan error.

Reliance upon the high-capacity magazine to sentence DeFelice to incarceration was plain error. "To establish plain error, a defendant must show '(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Wilson*, No. 23-6977, 2025 WL 2553161 (2d Cir. 2025) (quoting *United States v. Moore*, 975 F.3d 84, 90 (2d Cir. 2020)). The burden is on the defendant to establish each element. *Id.* (citing *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir. 2020)). Mr. DeFelice can satisfy each element of the plain error test: reversal is warranted.

First, the district court committed error. It relied upon conduct that was both lawful at the federal level and in a majority of states to aggravate the sentence in this case. Alternatively, and insofar as the district court acknowledged that the high-capacity magazine was not relevant conduct, the district court placed undue weight on that fact. Mr. DeFelice had a right to be sentenced for the offense of conviction, not some other offense. Importantly, the Connecticut high-capacity magazine statute includes a grandfather provision. An individual that possessed such an item prior to the law's passage in 2013, could legally possess one. Connecticut P.A. 13-220,

30

§1(a)(2); C.G.S. § 53-202w(a)(2). The district court never eliminated that possibility. In this case, the tail wagged the dog insofar as the district relied upon an offense that was unique to the State of Connecticut and 13 other states to aggravate a federal sentence.

Second, the error is clear and obvious. This is tantamount to sentencing based upon acquitted conduct. Importantly the Sentencing Commission recently abolished, or severely limited, acquitted conduct sentencing in Amendment 826 to U.S.S.G. § 1B1.3(c). Indeed, in this case the high capacity does not qualify as acquitted conduct within the contemplation of the guidelines: it was neither federally charged nor tried. Nor did the district court use this as acquitted conduct under the guidelines, it specifically disclaimed that use. A 150. Far from being fatal to DeFelice's argument on § 3553(a) ground, this aids it: DeFelice could not have been federally charged because there was no federal offense with which to charge him as to the high-capacity magazine. In the absence of state charges being filed, however, the district court simply lacked the information or context it needed to evaluate this putative state crime.

The error affected DeFelice's substantial rights. The district court itself said, "I agree with you that if this evidence didn't exist, it would look like a very different case to me." A 154. Sentencing upon a faulty premise or inaccurate information is a violation of Due Process. Recently, the Third Circuit noted that even though defendants have fewer rights in the sentence reduction context, this due process right still applies:

31

"This reflects the broader 'due process right not to be sentenced on the basis on invalid premises or inaccurate information. *United States v. Harmon*, 150 F.4th 197, 202 (3rd Cir. 2025) (cleaned up); *see also United States v. Norton*, 48 F.4th 124, 131 (3d Cir. 2022) ("It is well settled that a defendant has a due process right to be sentenced upon accurate information."). Not only is this a fundamental due process right, it is one sufficiently durable (hence substantial), that it survives into the sentence reduction context. Where the right extends that far, surely it is a substantial right in the direct appeal process. Not only did this error plainly effect the ultimate sentence—it seemed to be the material factor between probation and incarceration—the underlying right is substantial as a matter of law.

Finally, this right affects the fairness, integrity, and reputation of the judicial proceedings. Indeed, the district court is a conscientious and diligent jurist who seriously grappled with this case. However, its well-intentioned concern about high-capacity magazines produces a sentencing formula that will result in vastly disparate sentences across states and federal circuits. This disparity is not warranted: it is purely a function of idiosyncratic state laws in which Connecticut is a minority jurisdiction. Where the defense policy argument at sentencing was the seeming arbitrary distinctions in firearms regulation that do not operate to keep us safe, this formula invents another sentencing disparity. The opprobrium for that disparity would fall to

32

the federal courts, not to Congress nor a state legislature. Accordingly, the district court's error warrants reversal.

The district court committed plan error when it relied upon DeFelice's possession and transmission of a federally legal high-capacity magazine to sentence him to incarceration. Reversal and remand is warranted.

B. <u>A Remand Is Warranted Insofar as There Is No Deterrent Interest in Incarcerating a Person in Furtherance of a Statute That Congress Has Abandoned.</u>

No person should be the last casualty of a mistake. Whether incremental abolition of the National Firearms Act is a mistake or not, it is the path Congress has chosen. In July of 2025 Congress abolished the $200 tax payment that the law requires as a condition precedent to possession of an NFA firearm, *supra*. Where Mr. DeFelice pled poverty as mitigation at sentencing, this removes the barrier to compliance with the law.

On January 1, 2026, a person will be able to possess a silencer and short barrel rifles, provided that he registers those items with the ATF, for no cost. Importantly, Mr. DeFelice never disputed the public interest in registering NFA firearms, one that the government fairly articulated at sentencing. Similarly, DeFelice logged 173 firearms transfers through the State of Connecticut's lawful process for transferring handguns at the state level. Given his routine compliance with state law, it stands to reason that DeFelice would have registered his three NFA firearms had he not needed

33

$600 in fees to do so. Yet when the law permits this conduct, DeFelice will be approximately 2 months into a prison sentence for precisely that conduct.[11]

The district court's sentence was deeply rooted in general deterrence. But given Congress's actions four months after DeFelice's sentencing, it begs the question: precisely what conduct needs deterring in this instance? Indeed, the defense has not, and does not, dispute the government's interest in having NFA firearms registered and tracked. However, when the financial barrier to compliance is removed, it raises serious doubts about whether a person fails to comply with the law because of poverty or flat-out contempt.

C.  DeFelice's sentence was substantively and procedurally unreasonable.

DeFelice's sentence is procedurally unreasonable because it relies upon two faulty premises. First, it punishes him primarily for his violation of state law for which there is no federal interest; second, it punishes him in furtherance of a deterrent interest that Congress has since abandoned: payment of the $200 NFA tax stamp. It is substantively unreasonable because relies exclusively on general deterrence, overvaluing that interest in comparison to DeFelice's rehabilitation, family needs, and

34

---

[11] Moreover, 1 U.S.C. § 109 should not preserve Mr. DeFelice's conviction nor sentence. It is a savings clause that preserves convictions and sentences where Congress repeals those statutes. It seemingly protects against inadvertent reversal of convictions where Congress amends the criminal statutes. In this case, the changes in the law are rooted in sequential judicial, executive, and congressional actions that makes 1 U.S.C. § 109 inapposite.

the marginal value of federal prosecutions in relation to gun violence. It therefore falls outside the range of permissible sentences on these facts.

## CONCLUSION

For the foregoing reasons, this Court should vacate should remand this case for reconsideration of the Motion to Dismiss, or alternatively, resentencing.

Dated: October 8, 2025                    Respectfully submitted,

                                          TERENCE S. WARD

                                          FEDERAL DEFENDER
                                          DISTRICT OF CONNECTICUT

                                          */s/ Daniel M. Erwin*
                                          Assistant Federal Defender

                                          *Attorney for Defendant-Appellant,*
                                          *Nicholas DeFelice*

## <u>CERTIFICATIONS</u>

The undersigned counsel certifies that this brief complies with the type-volume limitations set forth by Local Rule 32.1(a)(4)(A), in that there are 9,742 words in this brief. The undersigned counsel further certifies that the foregoing has been served on counsel for all parties via the Court's CM/ECF system on the date reflected on the case docket.

*/s/ Daniel M. Erwin*
Assistant Federal Defender
